TERRY, RESPONDENT, *v.* STEPHENS, APPELLANT.

(No. 4,375.)

(Submitted April 20, 1921. Decided May 16, 1921.)

[198 Pac. 360.]

*Real Property—Brokers—Fraud—Evidence—Insufficiency.*

1. In an action against a real estate broker to recover secret profits claimed to have been made by him in a transaction resulting in an exchange of plaintiff's land for that of the purchaser, plaintiff paying to the purchaser the difference between the price set upon his (plaintiff's) land and that taken over by him in exchange, evidence *held* not to sustain a charge of fraud or misrepresentation on the part of the broker as to the value of the land received by plaintiff in exchange, it appearing that plaintiff was an experienced farmer thoroughly conversant with ranch property, had inspected the land before consummating the deal and taken possession, apparently satisfied with his bargain until he learned that the land taken over by him in exchange had been procured by defendant at a less price than he (plaintiff) was required to pay to its owner, no proof of the value of either property having been introduced.

*Appeal from District Court, Missoula County; Asa L. Duncan, Judge.*

---

1. For authorities passing on the question of right of principal to recover from broker or other agent commissions which latter received from other party to the contract, see notes in 1 **Ann. Cas.** 573; **Ann. Cas.** 1917A, 511; 28 **L. R. A.** (**n. s.**) 952.

[60 Mont. 82.]

ACTION by D. S. Terry against Allen Stephens and another. From a judgment for plaintiff, and from an order denying his motion for new trial, Stephens appeals. Reversed, and cause remanded with directions to enter judgment for defendant.

*Messrs. Murphy & Whitlock,* for Appellant, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

*Mr. Harry H. Parsons* and *Mr. Thomas N. Marlowe,* for Respondent, submitted a brief; *Mr. Marlowe* argued the cause orally.

MR. COMMISSIONER JACKSON prepared the opinion for the court.

Plaintiff alleges in substance that he owned certain property at Paradise, Montana; that W. H. Montgomery & Co. owned 150 acres of land in the Flint Creek district; that defendants were real estate agents and brokers in Missoula, Montana; that in May, 1913, plaintiff obtained the services of the defendants as agents or brokers to sell or exchange his property, agreeing to pay defendants five per cent of the purchase or exchange price, which was set at $3,800; that subsequently the defendants notified plaintiff that they had listed with them the Montgomery land at a price of not less than $7,800, which figure was low and the market price for it, and that in obtaining title thereto the plaintiff's title to his lands would be credited in the sum of $3,800, leaving a balance due to W. H. Montgomery & Co. on the exchange of $4,000; that the defendants represented to the plaintiff that the price of the Montgomery land was so low that Montgomery would pay no commission, and before the sale could be consummated, plaintiff would have to pay defendants the entire commission; that plaintiff accepted the proposition and offer, and did pay to defendants the sum of $430 as commission; that plaintiff relied implicitly on the representations of defendants, and that he was not acquainted with the market and actual value of the Flint Creek lands, and

the representations were made by the defendants with the object and intent that they should be believed and relied on by plaintiff; that, so believing and relying, plaintiff conveyed title to his lands to the defendants for convenience, and at their request, and executed a written contract, under defendants' direction, with W. H. Montgomery & Co. to purchase the Flint Creek lands and pay a balance therefor of $3,700; that the representations and statements of defendants were false, and were known to be false by defendants when made, and were made in an unlawful attempt to profit in the transaction, and for the purpose of having plaintiff act on the same; that plaintiff believed them to be true and acted upon them; that the W. H. Montgomery Company received but $4,800 for their property, and this plaintiff was defrauded by the defendants of $3,000, which defendants kept, converted to their own use, and defrauded the plaintiff thereof. Then it is alleged that the fraud herein was not discovered until March, 1915, when plaintiff, conferring with Montgomery, discovered what the company had received for the Flint Creek property, and that defendants while acting as his agents, charged him a commission on one hand, and made a wrongful and illegal profit on the other. Plaintiff prayed judgment in the sum of $3,000. The defendant Hooverson was not served and did not appear. The answer of defendant Stephens denies the allegations of plaintiff, except the execution of the contract between W. H. Montgomery & Co. and the plaintiff, and by way of affirmative defense pleads the statute of limitations (subd. 4, sec. 6449, Rev. Codes) and the statute of frauds. The reply is a denial of the affirmative defense and by estoppel. A trial was had to a jury. Defendant's motions for nonsuit and directed verdict were denied, and verdict returned for the plaintiff in the sum of $3,000. Defendant appealed from the judgment and the order denying a new trial.

Fourteen specifications of error are set out. It is not necessary to consider any of them, except those bearing on the action

of the court in denying defendant Stephens' motions for non-suit and directed verdict, as reversal is made imperative by plaintiff's own case.

Plaintiff's case showed that he owned the Paradise property, [1] and desired to dispose of it by sale or trade, and through the defendants went to look at some land in the Flint Creek district at $55 per acre, which plaintiff did not like, and some at $52 per acre, which he did like; that plaintiff, an experienced rancher for fifteen or eighteen years, "thoroughly familiar with ranching and ranch property in this section of the country," went over and across the $52 land he subsequently bought, examined it as much as he cared to, satisfied himself, then came back to Missoula and concluded the deal. Plaintiff says: "I was satisfied with the arrangement that was proposed." He then deeded his Paradise property to Hooverson and Stephens, and was credited therefor in the sum of $3,800. With respect to this he testified: "It didn't make any difference to me whether the proceeds of this property were turned over to the Montgomery people or kept by Hooverson and Stephens. I had made my bargain and turned over my property and received a contract to the Flint Creek Valley land. I had a contract to pay $3,700, and I carried out that contract and lived on the Flint Creek property." He then signed the contract, obligating himself to pay to W. H. Montgomery & Co. $3,700, the balance of the price he agreed to pay for 150 acres of Flint Creek Valley land at $52 per acre, less $300. The deposition of W. H. Montgomery, introduced in plaintiff's case, shows that the Montgomery Company had a contract with Hooverson to accept for the Flint Creek land the sum of $4,800, subject to a commission of $500, and that it was immaterial to the company what the land sold for; that "so far as we were concerned he was at liberty to sell at any price, and net to us the amount agreed upon." Plaintiff paid to Stephens, or to Hooverson and Stephens, the sum of $430 as commission for the sale price on both properties; $300 of which was on the Mont-

gomery purchase price, which sum was deducted from $7,800, and $130 on his own. Some time after the first payment set out in the contract between W. H. Montgomery & Co. and plaintiff, he discovered that the company had received the price testified to by W. H. Montgomery. He had already moved on the land, and apparently was satisfied with his bargain until this time.

This is, in effect, the plaintiff's case, and under no conceivable theory did he sustain the allegations of his complaint. He offered no proof of the value of either of the pieces of property, and nowhere does it appear what Montgomery's price was, but all of the negotiations had to do with the trade price between plaintiff and defendants. This cannot be construed as fraud or misrepresentation, in view of plaintiff's testimony that he was satisfied with his bargain. (*Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301; *Grinrod* v. *Anglo-American Bond Co.,* 34 Mont. 169; 85 Pac. 891.)

Plaintiff is conclusively shown by his own case to have dealt with the defendant at arm's-length, relying upon his own judgment. The motion for a nonsuit should have been granted. Stephens' case does not help plaintiff in any particular, but goes to explain the business relations between the defendants and plaintiff, with respect to the exchange, and the court erred in denying the motion for a directed verdict.

Because of the foregoing reasons, we recommend that the judgment and order denying the motion for a new trial be reversed, and that the cause be remanded to the district court, with directions to set aside the verdict and judgment for the plaintiff, and to enter judgment for defendant for his costs.

PER CURIAM: For the reasons given in the foregoing opinion, it is ordered that the judgment and order of the lower court be reversed and the cause remanded, with directions to set aside the verdict and judgment for the plaintiff and to enter judgment for defendant for his costs.

*Reversed and remanded.*